UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

GUILLERMO E. PHILPOTTS,

                            Plaintiffs,

    - against -

BOARD OF ELECTIONS IN THE CITY OF NEW
YORK,

                        Defendant.

------------------------------------------------------------------ X

15 Civ. 2366 (JBW)(SMG)

**DEFENDANT BOARD OF ELECTIONS IN THE CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION[1]**

Defendant Board of Elections in the City of New York (the "Board" or Board of Elections) submits this memorandum of law in opposition to plaintiffs' application for a preliminary injunction. Plaintiff commenced this action alleging that the Board violated his rights under both the First and Fourteenth Amendments to the United States Constitution, in that it deprived him of the right to have his name appear on the ballot as the candidate of the Democratic Party in the May 5, 2015 Special Election for Member of the Assembly from the 43rd Assembly District (the "Special Election") because he was not afforded the opportunity to "cure" the defect that no Certificate of Nomination was filed with the Board of Elections. Plaintiff's claims are without merit because: (1) the as applied challenges are barred by *Rivera-Powell v.*

---

[1] Plaintiffs claim to seek an order enjoining the Board from, among other things, "printing a ballot for use in Kings County, NY at the May 5, 2015 special election for member of the assembly from the43rd assembly district without including [plaintiff's] name." These ballots have already been printed.

*New York City Bd. of Elec.*, 470 F.3d 458 (2d Cir. 2006), (2) laches bars plaintiff's claims due to his delay in bringing this action, and (3) he has not alleged sufficient facts to support a plausible claim for relief. As such, the instant application should be denied and the case dismissed.

## FACTS[2]

This application stems from plaintiff's attempt to secure a place on the ballot after the Board, by action taken on March 17, 2015, determined that the papers purporting to nominate him suffered from a "fatal defect" in that no certificate of nomination was filed as required by N.Y. Election Law § 6-156, and the failure to timely file such a certificate is fatal to a candidacy pursuant to N.Y. Election Law § 6-106.

On or about March 1, 2015, the 43rd Assembly District Committee (the "Committee") met and nominated plaintiff to be its candidate in the Special Election. To effectuate that nomination, the Committee was required to reduce the nomination to writing, in the form of a certificate of nomination, and file it with the Board of Elections. This it did not do.

## ARGUMENT

## STANDARD OF REVIEW

Plaintiffs are seeking a preliminary injunction against the Board, directing the Board to place plaintiff's name on the ballot for the Special Election. "[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990). By asking the Court to compel

---

[2] Solely for the purpose of plaintiffs' application for a preliminary injunction, the "facts" alleged in the complaint and in plaintiffs' papers filed in support of the instant application and cited to herein are deemed to be true.

government action by directing the Board to place his name on the Special Election ballot, the plaintiffs are seeking mandatory injunctive relief, as defined by the Second Circuit. "A mandatory injunction, in contrast [to a prohibitory injunction] is said to alter the status quo by *commanding some positive act . . .*" A prohibitory injunction, in contrast, seeks to maintain the status quo pending a trial on the merits. *Mastrovincenzo v. The City of New York*, 435 F.3d. 78, 90 (2d Cir. 2006).

A party moving for a mandatory injunction – one that alters the *status quo* by commanding some positive act, must meet a higher standard than a party seeking a prohibitory injunction. *Tom Doherty Assocs., Inc. v. Saban Entm't., Inc.*, 60 F.3d 27, 33-35 (2d Cir. 1995). Plaintiffs cannot meet the extraordinarily high standard for the issuance of such an injunction. To obtain a mandatory injunction, the moving party must demonstrate "a greater likelihood of success on the merits," or that it will suffer extreme or very serious damage if denied preliminary relief. *Mastrovincenzo*, 435 F. 2d at 89 (citing *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F. 23d 27, 34 (2d Cir. 1995)); *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996); *Abdul Wali v. Coughlin*, 76 F. 3d 468, 473 (2d Cir. 1996); *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).

A heightened "substantial likelihood" standard may also be required when the requested injunction: (1) would provide the plaintiff with "all the relief that is sought" and (2) could not be undone by a judgment favorable to defendants on the merits at trial. *Mastrovincenzo*, 435 F.3d at 90. *See also No Spray Coalition, Inc. v. City of New York*, 252 F 3d 148, 150 (2d Cir. 2001).

The heightened standard has been applied in ballot access cases. *Rockefeller v. Powers*, 74 F. 3d 1367, 1376-77 (2d Cir. 1995); *Ulrich v. Umane*, 383 F. Supp. 2d 405, 409

(E.D.N.Y. 2005). In this case, the relief sought by plaintiffs would alter the *status quo* and afford plaintiffs essentially all the relief sought in the complaint; it thus should be denied.

In order to prove a violation of § 1983,[3] plaintiffs must prove, inter alia, that "the conduct complained of . . . deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994). Therefore, to establish a violation of § 1983 in this case, plaintiff must establish a violation of the First Amendment or the right to Equal Protection. This, he cannot do.

### POINT I

### PLAINTIFFS' CONSTITUTIONAL CLAIMS ARE NOTHING MORE THAN DISGUISED DUE PROCESS CLAIMS BARRED BY *RIVERA-POWELL*.

Plaintiff's claims, although styled as being under the First and Fourteenth Amendments, are nothing more than disguised Due Process claims. Accordingly, they are barred by *Rivera-Powell v. New York City Bd. of Elec.*, 470 F.3d 458 (2d Cir. 2006). Although plaintiff purports to allege claims under both the First and Fourteenth Amendments to the Constitution, these claims necessarily fail as he does not assert a facial challenge to a statute or rule, but merely an "as applied" challenge, which does not constitute a burden on his First Amendment rights. *Id.* at 469. (where "a plaintiff challenges a Board of Election[s] decision not as stemming from a constitutionally or statutorily invalid law or regulation, but rather as contravening a law or regulation whose validity the plaintiff does not contest, there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged

---

[3] Claims brought against the Board for violations of Constitutional rights are properly brought pursuant to 42 U.S.C. § 1983.

illegality."). The Second Circuit, in *Rivera-Powell,* held that a plaintiff could not sustain a procedural due process claim against the Board because the Board's procedures – notice of the Board's hearing and the opportunity to be heard – along with the statutory remedy provided by Article 16 of the Election Law, satisfied all procedural due process concerns. *Rivera-Powell,* 470 F.3d at 467 – 68. Therefore, to the extent that plaintiff claims that he was deprived of an opportunity to be heard, such claim is both legally and factually without merit and foreclosed, as a matter of law, by the Second Circuit's ruling in *Rivera-Powell*. Plaintiff had an opportunity to press his state law claims– that the Board's determination was faulty in New York Supreme Court and that he did not receive timely notice of the defect and an opportunity to cure it – but failed to do so. Because process was available to him, and the Second Circuit has previously determined that such process satisfies the requirements of the Due Process Clause, those claims must be dismissed. *Rivera-Powell*, 470 F.3d at 467 – 68.

Similarly, with regard to his Equal Protection claim, it fails as there are absolutely no allegations in the Complaint or in any affidavit submitted in support of the application for the Order to Show Cause that even suggest that he was treated differently by the Board than any other similarly situated individual – that is, someone nominated through a party nomination process. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (to satisfy the "similarly situated" element of an equal protection claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high."). Instead, he seeks to equate his situation with that of a person who sought to be nominated by an independent body through the petition process, who would be afforded an opportunity to cure certain defects (though, notably, not the failure to timely file the petition itself). Because he has not alleged that he was treated differently than someone similarly situated, his claim must fail.

## POINT II

## PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF LACHES.

The Supreme Court has long acknowledged that the timing in cases involving upcoming elections is an important consideration in determining the propriety of preliminary injunctive relief. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006); *Reynolds v. Sims*, 377 U.S. 533, 585 ("[U]nder certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief. . . ."). Thus, when a plaintiff fails to move promptly in seeking injunctive relief, there is an increased probability that a court order may have a disruptive effect on the local government.

The Supreme Court recently reaffirmed this proposition in *Purcell v. Gonzalez*:

> Faced with an application to enjoin [an election procedure] just weeks before an election, the Court of Appeals was required to weigh, *in addition to* the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures. Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase.

*Id.* at 7 (emphasis added). An awareness of the highly time-sensitive nature of elections and the process leading up to them is appropriate and necessary to preserve comity between the states and the federal government. *See Page v. Bartels*, 248 F.3d 175, 195-96 (3d Cir. 2001) ("Federal court intervention that would create such a disruption in the state electoral process is not to be taken lightly. This important equitable consideration [goes] to the heart of our notions of federalism. . . .").

In this case, Plaintiff moved for preliminary injunctive relief on April 27th, after the City Board had certified, printed, and distributed the military, absentee, and special ballots

pursuant to Election Law §§ 10-108(1) and 10-116(1), and commenced delivery of poll site voting materials and equipment. However, the plaintiff knew (or should have known) not later than March 17th that his name would not appear on the ballot when the Board determined his candidacy to be fatally defective.

This case is consistent with other cases analyzing the timing of requests for preliminary injunctive relief in the context of fast approaching elections, and concluding that laches is appropriate to bar the preliminary relief sought. *See e.g.*, *Miller v. Board of Commissioners of Miller County*, 45 F. Supp.2d 1369, 1373-75 (M.D. Ga. 1998) (motion for preliminary injunctive relief filed about two weeks prior to challenged primary election; motion "barred under the doctrine of laches"); *McNeil v. Springfield, Park District*, 656 F. Supp. 1200, 1202-03 (C.D. Ill. 1987) (injunction sought three weeks prior to election constitutes "inexcusable delay"); *Knox v. Milwaukee Board of Election Commissioners*, 581 F. Supp. 399 (E.D. Wis. 1984) (attempt to enjoin primary denied under doctrine of laches when suit filed several weeks before election).

Here, as set forth above, the plaintiff knew – or should have known – that his name would not appear on the ballot due to the failure to file a certificate of nomination and his failure to successfully obtain an order from the state court declaring his nomination valid. In the event that the Court were to grant the relief requested, the Board would be compelled to design and create new ballots for the election and have them printed, all at a substantial cost – both monetary and in terms of the human resources that would likely prevent the election from occurring on May 5, 2015. Plaintiff's decision to wait approximately five weeks to commence this action, only a week prior to the election, together with the potential prejudice to the Board in

the event that the Court were to grant the interim injunctive relief requested, warrants a finding that the plaintiffs' claims are barred by the doctrine of laches.

## POINT III

**IN THE EVENT THE COURT RESTORES THE CANDIDATES TO THE BALLOT, PLAINTIFFS SHOULD POST A BOND TO COVER THE COST OF REPRINTING THE BALLOTS FOR THE UPCOMING ELECTION**

Rule 65(c) of the Federal Rules of Civil Procedure requires that no temporary restraining order or a preliminary injunction shall issue unless the applicant for such an order posts security in an amount sufficient to pay the costs and damages that a wrongfully restrained or enjoined party may suffer.  Fed. R. Civ. P. Rule 65(c).  Here, plaintiff's application for a preliminary injunction seeks to have his name placed on the ballot for election as the Democratic Party nominee for the public office of Member of the Assembly from the 43rd Assembly District. Here, the ballots have already been printed and tested,[4] and the delivery of scanners, ballot marking devices, supply cart, and other equipment necessary to conduct the Special Election has already commenced.

The requirement that security be posted prior to the issuance of interim injunctive relief is a restriction on federal courts in their exercise of their general equitable powers.  *Halpert v. Engine Air Service, Inc.*, 212 F.2d 860, 863 (2nd Cir. 1954) *cert granted* 348 U.S. 854, *writ of certiorari dismissed* 350 U.S. 801.  Rule 65(c)'s requirement that security be posted prior to the issuance of interim injunctive relief is to make the party against whom the injunction issued

---

[4] Because New York has adopted an electronic voting system, all voting will be conducted using paper ballots which will be fed into an optical scan device, which will canvass the ballots.

whole for costs and damages occasioned by the wrongful issuance of such injunction. *Bass v Richardson*, 338 F Supp 478 (S.D.N.Y. 1971).

For the reasons set forth above, defendant Board of Elections respectfully requests pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, that in the event that the Court is inclined to enter an order granting plaintiffs the interim injunctive relief that they seek, the Court condition such relief on the giving of security in an amount to be determined by the Court on a record to be made on the return date or as soon thereafter as is possible.

## CONCLUSION

For the reasons set forth herein, defendant respectfully requests that the Court enter an Order: (a) denying plaintiff's application for interim injunctive relief; (b) dismissing the complaint; and (c) for such other and further relief as is just and proper, or, if the Court is inclined to grant plaintiffs' application, for an order requiring plaintiffs, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, to condition the granting of such relief upon the posting of security in an amount to be determined by the Court.

Dated:     New York, New York
           April 28, 2015

                              **ZACHARY W. CARTER**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendant Board of
                                Elections in the City of New York
                              100 Church Street, Room 2-126
                              New York, New York  10007
                              (212) 356-2087
                              e-mail: SKitzing@law.nyc.gov


                              By:     s/Stephen Kitzinger
                                      _____
                                      Stephen Kitzinger
                                      Assistant Corporation Counsel